# Exhibit B

Filed
9/16/2019 5:25 PM
Anne Lorentzen
District Clerk
Nueces County, Texas

CAUSE NO. _____ 2019DCV-4621-A

| | | |
|---|---|---|
| **SPARKLE ASSET MANAGEMENT LLC** | § § § | **IN THE DISTRICT COURT** |
| **Plaintiff** | § § | |
| **v.** | § § | **_____ JUDICIAL DISTRICT** |
| **PELEUS INSURANCE COMPANY and STRATA CLAIMS MANAGEMENT** | § § § § | |
| **Defendants** | § | **NUECES COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Sparkle Asset Management LLC, files this petition complaining of Defendants, Peleus Insurance Company and Strata Claims Management, in which Plaintiff is seeking monetary relief of over $1,000,000. In support of this petition, Plaintiff would show this honorable court as follows:

### I. Parties, Venue and Discovery Level

Plaintiff, Sparkle Asset Management LLC (hereinafter "Sparkle") is a Texas Limited Liability, and is a named insured under the subject policy with Peleus Insurance Company.

Defendant, Peleus Insurance Company (hereinafter "Peleus") is a is a foreign surplus lines insurance company doing business in Texas that can be served through the Texas Commissioner of Insurance at 333 Guadalupe, Austin, Texas 78701. Peleus' mailing address is address is P.O. Box 469012, San Antonio, Texas 78246-9012.

Defendant, Strata Claims Management, LLC (hereinafter "Strata"), is a Texas limited liability company that can be served by serving its registered agent for service,

Copy from re:SearchTX

Corporation Service Company D/B/A CSC-Lawyers INCO at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

The venue of this case is proper in Nueces County, Texas under Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code.

Plaintiff intends to conduct the discovery in this case under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

## II.  **Agency and Respondeat Superior**

Whenever in this petition it is alleged that the Defendants did any act or thing, it is meant that Defendants or their agents, officers, servants, employees, or representatives did such act or thing.  They were also done with the full authorization or ratification of Defendants or done in the normal routine, course, and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives.

## III.  **Conditions Precedent**

All conditions precedent to recovery have occurred or been performed. The giving of sixty days written statutory notice for this claim has been rendered impracticable by reason of the necessity of filing suit in order to prevent the potential expiration of a statute of limitations applicable to this claim.

## IV.  **Facts of the Case**

Plaintiff purchased commercial insurance from Peleus (Policy Number P723-1426870316-01) through Strata to cover property losses for the policy period of October 1, 2016 to October 1, 2017 for several properties, including the Brittany Apartments, the Coral Cay Apartments, and the Colony Duplexes.

Copy from re:SearchTX

Strata is Peleus' agent for the reporting, administering, and adjusting claims under the insured's master policy.  Another one of Strata's affiliated entities, Strata Real Estate Services Association, is designated as the first named insured in the master policy.  Strata and Peleus are involved in a joint enterprise.

On or about August 25, 2017, during the subject policy period, Hurricane Harvey caused severe windstorm damage to the Brittany Street Apartments (hereinafter "Brittany") located at 8202-40 Brittany, Corpus Christi, Texas 78412; the Coral Cay Apartments (hereinafter "Coral Cay") located at 1234 Nile Dr., Corpus Christi, Texas 78412; and the Colony Duplexes (hereinafter "Colony") located at 701-1044 Dabney; 701-1044 Collins; 701-844; and 902-1009 Campbell Corpus Christi, TX 78411. Plaintiff thereinafter reported this loss to its insurer and its agents, who assigned this loss the claim numbers 12031, 12032, and 12047.

### **Brittany Street Apartments, 8202-40 Brittany, Corpus Christi, TX**

On August 29, 2017, Strata and its adjuster, Laureen Lehman, acknowledged receipt of claim 12031 for damage to Brittany on behalf of Peleus. Strata then engaged JS Held and its adjusters, Steve Nash and Paul Spears, to investigate and estimate the claim. Thereafter, on September 19, 2017, Lehman accepted coverage for the claim on Peleus's behalf.

Through Lehman, Peleus and Strata retained Anthony Capoccio, RRO and Collin Oatman, P.E. of Childress Engineering Services (hereafter "CES") to assist in investigating the claim. Plaintiff believes Peleus and Strata hire these engineers and consultants because they know that these consultants are biased for insurance companies, and will give the insurer favorable, result-oriented reports on which they can low-ball an insured's claim.

Copy from re:SearchTX

On October 2, 2017, Capocci and Oatman conducted a roof assessment on the (6) six buildings for damage attributable to Hurricane Harvey. True to form, even though the roof of one of the buildings was almost completely blown off, in an October 3, 2017 report, CES concluded that only one roof of the six buildings needed to be replaced. CES concluded that the perimeter metal flashing and the fascia trim on the remaining five buildings (Building 8202-8226 and 8240) needed to be completely replaced, but the soffit could be repaired in areas that were loosened by the wind.

Based on this estimate, in a November 2, 2017 report, Nash of JS Held estimated the Replacement Cost Value (RCV) of the hurricane damage repairs to the Brittany Apartments at only $96,296.73 less depreciation for an Actual Cost Value (ACV) of $92,787.19. On November 15, 2017, Nash revised his estimate to include engineering fees bringing the RCV total to $107,565 less depreciation for an ACV of $104,055.64. On January 22, 2018, Strata issued an advance payment to Plaintiff in the amount of $25,000 for the hurricane damage to the Brittany Street Apartments.  On February 21, 2018, Strata issued an additional check in the amount of $64,238.74 based on the November 15, 2017 estimate by JS Held.

Plaintiff contracted Tice Enterprises Ltd. (hereinafter "Tice") as its general contractor to assist with the inspection and repairs to Brittany. Plaintiff also retained APEC Engineering and Laboratory, LLC (hereinafter "APEC") to investigate and report on the cause of damage and the extent of the damage to Brittany.  In a sealed report dated April 9, 2018, Matt B. Phelps of APEC, concluded that there was leakage through the wall cladding, wall components, roof cladding and roof components to the subject property due to the high winds from the Hurricane.

Copy from re:SearchTX

In response to APEC, on July 3, 2018, CES wrote a follow up assessment indicating that it did not find damage to the main structure of the buildings due to wind and rain events created during Hurricane Harvey. Instead, CES blamed the noted damage on foundation movement and concluded that while there were some areas of damage which may be attributed to Hurricane Harvey winds, these did not include the masonry veneer cladding or interior drywall cracking. CES also observed multiple areas where fascia was missing exposing the sub-fascia and stated that the roof damage observed by APEC may have resulted in some of the interior moisture damage.

In a July 9, 2018 email, Lehman informed Plaintiff that Childress was not in agreement with APEC's findings and requested repair recommendations from APEC and any estimates for the repair that may have been obtained.  Lehman also requested that the engineers meet on site to jointly inspect the claimed damage.  The same day, APEC provided a sealed Addendum to clarify its repair recommendations.  APEC stated that due to Hurricane Harvey, 1) the roof had been damaged beyond repair and needed to be removed and replaced; 2) the wall/roof cladding had been damaged beyond repair and needed to be removed and replaced; 3) the interior space and exterior trim damaged by moisture intrusion or mold growth needed to be removed and placed; 4) Units A, B, C, and D in building 8232 must be rebuilt; 5) any sheetrock, plywood, or oriented strand board (osb) and any wall/roof cladding damaged by water or structural overload must be removed and replaced; 6) the window and door fenestrations that have been damaged or displaced needed to be rebuilt; and 7) the sealants around the walls and windows needed to be replaced.

On July 23, 2018, a meeting between the representatives of CES and APEC occurred on site. While awaiting yet another report from CES, in a July 30, 2018 email,

Copy from re:SearchTX

Plaintiff advised that it would not be able to repair anything until it received the final CES report. Concerned with the policy's requirement of repair or replacement within 365 days of the loss, Plaintiff requested an extension on the 365 day deadline noted in the repair clause.

Lehman responded and indicated that an extension of three months from the date Plaintiff received the engineer's report would be agreeable. On August 17, 2018, Donna Dahlen, the regional claims leader for Higginbotham Insurance reached out to Lehman and requested an extension up to six months for repairs. Lehman responded to this email stating that she should have the updated engineer report soon and would have to review it prior to granting the requested extension.

In an August 26, 2018 letter, CES provided Lehman a summary of CES and APEC's meeting. CES claimed that during the meeting some areas of agreement were identified, and but that the following areas were disagreed upon: 1) the replacement of entire roof system to the property, 2) whether the uplift test for determination provided the correct information to show that roofs do not typically fail under uplift pressure, and 3) the widespread water damage at the exterior walls claimed by APEC because CES was unable to find evidence of any other wind created openings in the exterior wall that is attributable to Hurricane Harvey. CES also provided an inspection summary which stated that CES noted large vegetation near the buildings and areas of poor drainage which contribute to foundation movement problems previously included in their floor elevation surveys taken of the apartment units. CES also noted that the interior access to the apartments revealed ceiling finish repair areas and water damage areas that had been repaired and current leaks. CES concluded the water damage around the windows was associated with the intense rainfall from Hurricane Harvey overwhelming the

Copy from re:SearchTX

deficient window system and not from wind created openings.  Lehman did not address the request for additional time.

In an October 19, 2018 letter, APEC provided its own summary of the meeting with CES.  APEC stated that: 1) APEC did not find evidence indicating that the property was denied coverage due to the condition of the roof, therefore it is more likely than not, prior to Hurricane Harvey that the roof was compliant with its designed uplift pressure resistance and the replacement of entire roof systems to the property is justified, 2) the data collected during the Dome Uplift Test identified that the covering had in fact been uplifted and was not adhered, and 3) there are horizontal fractures on the 2nd story elevations that are consistent with racking and movement due to laterally applied wind pressure.

APEC found that there were gaps near the windows and diagonal cracking near the windows and doors indicating racking.  Due to this racking, wind created openings near the fenestration would allow moisture travelling within the moisture plane to divert into these openings in the interior the structure. As a result the seals around the windows and door failed and allowed moisture to directly penetrate the structure as described by CES.

APEC further addressed the large vegetation theory by CES and stated that this would be limited to 3 of the 6 buildings having mature trees growing within 10 feet of the foundation, which would not apply to damage pattern found on all of the structures. In addition, APEC indicated that upheaval due to vegetation is normally very distinct and could have been identified through the survey data collected by CES.  Finally, APEC stated that CES made no claims as to the specific location of any poor drainage area at Brittany, or how both the trees and the poor drainage areas correlate to the significant

Copy from re:SearchTX

foundation movement claimed to be indicated by their survey. This letter was provided to Peleus, Strata and Lehman.

Peleus, Strata, and Lehman requested that CES provide a supplemental report based on their findings on the interior damage at Brittany. Over a year after the storm, in a December 17, 2018 report, CES stated for the first time that it found localized areas of interior finish damage which were consistent with storm related moisture intrusion of the building envelope, some of which was as a result of Hurricane Harvey.

CES found that much of the interior gypsum board had been removed and the remaining gypsum board at the walls and ceilings was water damaged and should be removed and replaced. According to CES, in addition to the damage to the building envelope during the hurricane, there were other sources of moisture that have caused damage at the apartment units. CES detected elevated moisture levels sporadically in the buildings. CES noted fascia damage that had not been repaired and has not been covered and recommended that all building envelope deficiencies be repaired to avoid unsanitary conditions for the apartment tenants and additional building damage.

Based on this new CES report, the insurer and Lehman requested a supplemental estimate to include the interior damage to the Brittany Street Apartments as a result of Hurricane Harvey.  In a January 24, 2019 estimate, Nash of JS Held estimated the damage to the Brittany Street Apartments at $169,806.62 RCV less depreciation for an ACV of $134,649.47.  the line items of this estimate, however, did not correspond with the findings by CES.

On February 7, 2019, CES provided a project commentary in response to APEC's October 19, 2018 letter.  CES stated that the APEC letter did not provide any new information regarding Brittany, and as such its opinions and findings as expressed in

Copy from re:SearchTX

prior correspondence remained unchanged.   On February 8, 2019, the insurer and Lehman forwarded a proof of loss to Plaintiff for the undisputed ACV for an additional $23,864.60.

On May 20, 2019, Lehman sent Plaintiff an email requesting a response to the January 24, 2019 estimate provided by JS Held, and if Plaintiff disagreed with the JS Held estimate, a sworn proof of loss. On May 23, 2019, Plaintiff responded and stated that Plaintiff had disputed Strata's scope of work since the onset of the claim. Plaintiff further pointed out that the final estimates provided to Plaintiff did not correspond with the findings of CES. Plaintiff, however, provided a signed partial proof of loss for the additional undisputed ACV.

On July 12, 2019, APEC provided an addendum to its April 4, 2018 damage assessment report following additional testing and investigation of the subject property. APEC concluded the following:

1) The direct wind and wind buffets for Hurricane Harvey generated sufficient force and dynamic loading to cause the damage found on the subject buildings;

2) Moisture continued to penetrate the roof and roof replacement was necessary to avoid internal degrading;

3) Cracks and shifting were present in the walls; fenestrations were no longer even, causing cracks to open at window sites; wall deflection exceeded the IBC 2015 standards for deflection in masonry veneer walls; and water was penetrating the walls due to the Hurricane Harvey caused cracks in the veneer and the movement of the brick ties through the moisture pane. Damage to the interior drywall and installation was widespread. As a result, the brick veneer walls, insulation within exterior walls, and gypsum on exterior walls require replacement.

4) The roof systems on all buildings were damaged and require complete replacement; and the brick veneer walls are damaged and require complete replacement, along with insulation and gypsum within exterior faced walls as a result of Hurricane Harvey, and

5) it is likely that the handling of many of the HVAC units will cause irreparable damage to these units, and will require replacement.

Copy from re:SearchTX

A copy of this report was provided to Defendants.

Plaintiff's general contractor, Tice, inspected the property and found substantial damage to the property caused by Hurricane Harvey. In July 2019 estimates, Tice determined the necessary and reasonable cost to repair the damage to the Brittany Street Apartment buildings caused by the Hurricane at $3,562,228.30 with a code upgrade amount of $448,451.34.

As experienced adjusters, who had inspected and/or viewed the property, Peleus and Strata either knew or should have known that J.S. Held prepared result-oriented estimates that did not properly address the necessary and proper repair of the all of the hurricane damage as a result of the subject storm.

### Coral Cay Apartments, 1234 Nile Road, Corpus Christi, TX

The Hurricane also caused substantial damage to the Coral Cay Apartments. On August 29, Strata and its agent, Laureen Lehman, acknowledged receipt of claim 12031 for damage to Coral Cay on behalf of Peleus. Strata then engaged JS Held and its adjusters, Steve Nash and Paul Spears, to adjust the claim.  Thereafter, on September 19, 2017, Lehman accepted coverage for the claim on Peleus's behalf.

The insurer, Strata, and JS Held retained Anthony Capoccio, RRO, Daniel P. Rasband, P.E., Eddie Zansler, and Collin Oatman P.E. of Childress Engineering Services (hereafter "CES") to assist in investigating the claim. Plaintiff believes the Insurer, Strata, and JS Held hire these engineers and consultants because they know that these consultants are biased for insurance companies, and will give the insurer favorable, result-oriented reports on which they can low-ball an insured's claim.

Copy from re:SearchTX

On September 26, 2017 and September 27, 2017, Rasband and Zansler performed a structural assessment on (14) fourteen buildings attributable to Hurricane Harvey. Thereafter, on October 2, 2017, Capocci and Oatman conducted a roof assessment on fourteen buildings attributable to Hurricane Harvey.

In an October 12, 2017 report on the roofs, CES concluded that it did find some limited damage to all fourteen of the building roofs due to Hurricane Harvey. This damage included deflected parapet walls, compromised mansard structures, and perimeter metal edging disturbance from the wind.  CES also observed many (13) areas where the mansard tiles had already been removed.  CES stated that some of the masonry walls were severely deflected, in several locations the tile mansard roofs were also deflected and damage was observed in some of the decorative masonry dividers on some buildings. CES found that these defects impacted the roof and flashings and all metal edging at the gutters of all (14) buildings should be repaired. CES concluded that there was no roof damage on the low sloped roof areas caused by Hurricane Harvey with exception of the metal edge at the gutter on the rear elevation.

In an October 17, 2017 report on Coral Cay's structure, CES found damage to the exterior elements of the buildings due to the wind and rain events created during the Hurricane Harvey storm.  CES concluded that 1) there was structural damage to the masonry building end walls isolated to Building 2 and Building 8, and to the parapet walls. As a result, the parapet masonry should be removed or reconstructed down to the roof line; 2) there was structural damage in 13 locations to the tile mansard roofs and as a result, all of the mansards should be structurally inspected by a professional engineer to ensure that they are structurally capable of supporting the tile and the anticipated design loads, 3) there was no structural damage to the masonry accent walls caused by

Copy from re:SearchTX

Hurricane Harvey, and 4) there was no structural damage to the masonry divider walls, so any current distress existed before Hurricane Harvey.

Based on this report, in a November 3, 2017 report, Nash of JS Held estimated the Replacement Cost Value (RCV) of the hurricane damage repairs to the Coral Cay Apartments at only $345,445.36 less depreciation for an Actual Cost Value (ACV) of $326,413.47. On November 15, 2017, Nash revised his estimate to include engineering fees bringing the RCV total to $362,558.99 less depreciation for an ACV of $343,527.10. On January 22, 2018, Strata issued an advance payment to Plaintiff in the amount of $75,000 for the hurricane damage to the Coral Cay Apartments. On February 21, 2018, Strata issued an additional check in the amount of $136,111.80 based on the November 15, 2017 estimate by JS Held.

Plaintiff contracted Tice Enterprises Ltd. (hereinafter "Tice") as its general contractor to assist with the inspection, repairs, and insurance claim to the Coral Cay Apartments. Plaintiff also retained APEC Engineering and Laboratory, LLC (hereinafter "APEC") to investigate and report on the cause of damage and the extent of the damage to the Coral Cay Apartments.  In a sealed report dated April 18, 2018, Matt B. Phelps of APEC, concluded that there was noticeable damage on the roof and wall components and cladding of the subject property.  APEC also stated that the wall cladding was damaged and would allow bulk water to penetrate to the drainage plane which would further damage the drainage plane and cause it to deteriorate and water to penetrate into the structure.  APEC also indicated there was damage on the roof cladding and the deck of the roof.

In response to the APEC report, on July 5, 2018, CES wrote a follow up assessment stating that did not inspect the interiors of the units, but based upon CES'

Copy from re:SearchTX

limited review, CES did not find any indication of damage to the main structure of the building due to wind and rain events created during the Hurricane Harvey storm. CES observed several areas showing damage to the fascia and soffit, and areas where the parapet projects were not vertical which may be associated with hurricane force winds or wind carried missile impact. CES also identified numerous signs of distress which it claimed were more consistent with foundation movement than damage from a wind storm event and opined that the damage conditions described in the APEC report were consistent with foundation movement and were not wind storm damage.

In conclusion, CES stated that there were areas of damage which may be attributed to Hurricane Harvey winds but these areas did not include the masonry veneer cladding or interior drywall cracking. CES indicated that areas of the masonry veneer showed signs of prior repair older than the occurrence of Hurricane Harvey. CES opined that there was no roof damage on the low sloped areas with the exception of the metal edge at the gutter on the rear elevation.  However, CES stated that any damage to the perimeter parapet conditions such as the tile mansards and the brick end walls impacting the roof should be included in the repair scope and indicated that further interior investigation was still needed.

On July 9, 2018, APEC provided a sealed Addendum to clarify its repair recommendations for Coral Cay.  APEC stated that 1) the roofs had been damaged beyond repair and needed to be removed and replaced; 2) the wall/roof cladding had been damaged beyond repair and needed to be removed and replaced; 3) the interior space and exterior trim damaged by moisture intrusion or mold growth needed to be removed and placed; 4) any sheetrock, plywood, or oriented strand board (osb) and any wall/roof cladding damaged by water or structural overload must be removed and

Copy from re:SearchTX

replaced; 5) the window and door fenestrations that have been damaged or displaced needed to be rebuilt; and 7) the sealants around the walls and windows needed to be replaced.

In a July 10, 2018 email, Plaintiff informed Lehman that CES was never denied access to inspect the interior and offered to schedule an additional time to conduct a re-inspection. On July 23, 2018, a meeting between the representatives of CES and APEC occurred on site. While awaiting yet another report from CES, in a July 30, 2018 email, Plaintiff advised that it would not be able to repair anything until it received the final CES report. Concerned with the policy's requirement of repair or replacement within 365 days of the loss, Plaintiff requested an extension on the 365 day deadline noted in the repair clause.

Lehman responded and indicated that an extension of three months form the date Plaintiff received the engineer's report would be agreeable. On August 17, 2018, Donna Dahlen, the regional claims leader for Higginbotham Insurance reached out to Lehman and requested an extension up to six months for repairs. Lehman responded to this email stating that she should have the updated engineer report soon and would have to review it prior to granting the requested extension.

In an August 26, 2018 letter, CES provided Lehman a summary of CES and APEC's meeting. CES claimed that during the meeting some areas of agreement were identified, and but that the following areas were disagreed upon:

1) the replacement of entire roof systems to the property.  CES believed that the state of the roofs prior to the storm was associated with some unknowns and that the roof cores clearly show roofing membrane installation defects that would most likely not be able to withstand 45psf or uplift prior to Hurricane Harvey;

2) whether the uplift test for determination provided the correct information to show that roofs do not typically fail under uplift pressure; and

Page 14 of 25

Copy from re:SearchTX

3) the widespread water damage at the exterior walls claimed by APEC because CES was unable to find evidence of any other wind created openings in the exterior wall that is attributable to Hurricane Harvey.

CES also provided an inspection summary in which it noted water damage areas that had not been repaired and locations of current leaks. CES also noted that the interior damage included water damage around the second floor windows.   CES concluded the water damage around the windows was associated with the intense rainfall from Hurricane Harvey overwhelming the deficient window system and not from wind created openings.

Based on this new CES letter, the insurer and Lehman requested a supplemental estimate to include the interior damage to the Coral Cay Apartments as a result of Hurricane Harvey.  Lehman did not address the request for additional repair time.  In a January 21, 2019 estimate, Nash of JS Held estimated the damage to the Coral Cay Apartments at $353,778.01 RCV less depreciation for an ACV of $334,746.12.

On May 20, 2019, Lehman requested a response to the January 24, 2019 estimate provided by JS Held, and requested a sworn proof of loss if Plaintiff disputed the estimate. On May 23, 2019, Plaintiff responded and stated that Plaintiff had disputed Strata's scope of work since the onset of the claim. Plaintiff further pointed out that the final estimates provided to Plaintiff did not correspond with the findings of CES.

On July 12, 2019, APEC provided an addendum to its April 9, 2018 damage assessment report following additional testing and investigation of the subject property. APEC concluded the following:

1) The direct wind and wind buffets for Hurricane Harvey generated sufficient force and dynamic loading to cause the damage found on the Coral Cay buildings.

2) During the storm event, end walls had collapsed and the fractures indicated

Copy from re:SearchTX

that many other walls were on the verge of collapse. The separation between the end walls and side walls has allowed moisture to penetrate into the structure. The moisture intrusion has caused damage to the interior wall covering requiring replacement and the insulation within the end walls is likely waterlogged and will require replacement.

3) The wind forces applied to the end walls, along with the uplift forces applied directly to the roof has caused the roofs to fail and leak.  The wind lifted mansards and false firewalls are also attached to the roof and have caused uneven tension to be applied to the roof and have caused loss of granules and ripples in the roof surface.  The roofs are damaged and must be completely replaced.

4) The vast majority of the mansards and false firewalls have been moved beyond what is allowable and these movements have caused damage to the roof.  All the mansards and false firewalls require replacement, and

5) It is likely that the handling of many of the HVAC units will cause irreparable damage to these units, and will require replacement.

Plaintiff's general contractor, Tice, inspected the property and found substantial damage to the property caused by Hurricane Harvey. In July 2019 estimates, Tice determined the necessary and reasonable cost to repair the damage to the Coral Cay Apartment buildings caused by Hurricane Harvey at $7,472,160.76 with a code upgrade amount of $1,596,532.72.

As experienced adjusters, who had inspected and/or viewed the property, Peleus and Strata either knew or should have known that J.S. Held and CES prepared result-oriented estimates that did not properly address the necessary and proper repair of the all of the hurricane damage as a result of the subject storm.

### **The Colony Duplexes, 701-1044 Dabney; 701-1044 Collins; 701-844; and 902-1009 Campbell Corpus Christi, TX 78411**

The Hurricane also caused substantial damage to The Colony Duplexes. On August 29, Strata and its agent, Laureen Lehman, acknowledged receipt of claim 12047 for damage to Colony on behalf of Peleus. Strata then engaged Engle Martin and Associates and its adjuster, Thomas Koralewski, to adjust the claim.  Thereafter, on

Copy from re:SearchTX

September 19, 2017, Lehman accepted coverage for the claim on Peleus's behalf.

Plaintiff contracted Tice Enterprises Ltd. (hereinafter "Tice") as its general contractor to assist with the inspection and repairs to Colony. After multiple rounds of negotiations and estimates, the parties came to a general agreement on the scope of the damages caused by Hurricane Harvey and what it would take to repair those damages. Tice then completed the approved repairs to the property which involved multiple trades and multiple locations, making it a complex job that required a general contractor.

After completing the repairs, on March 21, 2018, Plaintiff submitted a revised estimate from Tice in the amount of $409,947.38, which included $68,325.24 in general contractor overhead and profit. Ms. Lehman, however, removed the general contractor overhead and profit on roofing from the estimate along with a few other small items and submitted an April 28, 2018 final loss recap to Plaintiff in the amount of $319,005.13. Notably, Lehman, Strata, and Peleus included general contractor overhead and profit for all of the other trades, and just removed the overhead and profit on roofing services.

On May 2, 2018, Ms. Lehman sent Plaintiff a Proof of Loss asking that it be executed prior to payment on the claim. Although Plaintiff was not in agreement with the fact that overhead and profit was not addressed, the Proof of Loss was signed for the undisputed amounts. The Proof of Loss reflected the following:

| | |
|---|---|
| Whole Undisputed Loss or Damage: | $319,005.13 |
| Less Depreciation: | $0.00 |
| Actual Cash Value Loss or Damage: | $319,005.13 |
| Less deductible: | $42,790.00 |
| Less partial payment: | $75,000.00 |
| Net payment: | $201,215.13 |

Copy from re:SearchTX

After receiving the sworn proof of loss, Strata issued payment to Plaintiff for the undisputed loss damage in the amount of $201,215.13. To date, Strata, Peleus, and Lehman refused to pay general contractor overhead and profit for the roofing portion of the repairs to Colony.

To date, the Insurer has paid the following amounts for the damage to the Plaintiff's properties:

## Brittany Street Apartments
$113,736.67

As a result, Peleus owes a total of $1,255,230.60 for property damage under the policy on Plaintiff's insurance claim (Claim 12031) on Brittany. Plaintiff is aware that Tice's estimate is above the policy limits for this property. The amount owed is based on the combined policy limit for building damage, increased cost of construction, and asbestos removal ($1,389,880) less the $20,912.80 deductible and $113,736.67 in previous payments. Plaintiff provided Peleus with a sworn proof of loss for this amount.

Peleus also owes Brittany $25,680.00 for lost rents that have occurred from October 1, 2018. This amount is calculated at the previously used amount of $3,210.00 per month previously paid by Peleus.  These lost rents continue to incur.

## Coral Cay Apartments
$211,111.80

As a result, Peleus owes a total of $5,939,424.40 for property damage under the policy on Plaintiff's insurance claim (Claim 12032) on Coral Cay. Plaintiff is aware that Tice's estimate is above the policy limits for this property. The amount owed is based on the combined policy limit for building damage, increased cost of construction, and asbestos removal ($6,260,916.50) less the $113,380.30 deductible and $211,111.80 in previous payments.  Plaintiff Peleus with a sworn proof of loss for this amount.

Copy from re:SearchTX

**The Colony Duplexes**
$276,215.13

As a result, Peleus owes a total of $ 68,325.24 for property damage under the policy on Plaintiff's insurance claim (Claim 12047) on Colony. This amount is based on the outstanding amount of general contractor overhead and profit owed according to Tice's estimate.

## V.  **Cause of Action for Breach of Contract**

According to the insurance policy that Plaintiff purchased, Defendants have the duty to investigate and pay Plaintiff policy benefits for claims made for damages to its property caused by the windstorm from Hurricane Harvey.  The subject windstorm caused substantial damage to Plaintiff's property, which damage is covered under Plaintiff's insurance policy with Peleus. Peleus has also breached its contractual obligation and the subject insurance policy by failing to properly pay Plaintiff policy benefits for the cost to properly repair the windstorm and ensuing water damage to its property.  Peleus has also breached any contractual provisions on timely investigating, adjusting, and paying Plaintiff's storm damage insurance claim.  As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this petition.

## VI.  **Causes of Action for Violation of Chapter 542 of the Insurance Code**

Peleus, its agents, and its adjusters' conduct  that  is  described  in  this petition  violates  Chapter  542  of  the  Texas Insurance Code. Within 30 business days after the receipt of either actual or written notice of Plaintiff's windstorm claim, Peleus did not request from Plaintiff any items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for its claim.

Copy from re:SearchTX

As a result, Peleus has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 40 days after receiving either actual or written notice of its claim. Peleus has also violated Section 542.058 by failing to properly pay Plaintiff's claim within 50 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period. In the event it is determined that Peleus owes Plaintiff any additional monies, then Peleus has automatically violated Chapter 542 of the Texas Insurance Code.

## VII.  DTPA Causes of Action

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendants, Peleus and Strata under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against Defendants Peleus and Strata. Specifically, these Defendants' violations of the DTPA include, without limitation, the following matters:

A. By their acts, omissions, failures, and conduct that are described in this petition, Defendants Peleus and Strata have violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) Peleus and Strata's unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim, (2) their failure to properly investigate Plaintiff's claim, (3) Defendants' use of a biased adjusters and consultants to obtain result-oriented estimates and reports to assist the insurer in denying Plaintiff's insurance claim, and (4) their failure to pay for the proper repair of Plaintiff's property on which Defendants' liability had become reasonably clear;

B. As described in this petition, Defendants Peleus and Strata represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, Defendants Peleus and Strata represented to Plaintiff that the subject insurance policy and their adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA;

Copy from re:SearchTX

D. As described in this petition, Defendants Peleus and Strata represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) if the DTPA;

E. By representing that Defendants would pay to repair the damages caused by windstorm and then not doing so, Defendants have violated Sections 17.46(b)(S), (7), and (12) of the DTPA;

F. Defendants have breached an express warranty that the damage caused by windstorm would be covered under the subject insurance policy. This breach entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.SO(a)(2) of the DTPA;

G. Defendants' actions, as described in this petition, are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants' unconscionable conduct give Plaintiff the right to relief under Section 17.SO(a)(3) of the DTPA; and

H. Defendants' conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.SO(a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendants Peleus and Strata are a producing cause of Plaintiff's damages that are described in this petition.

## VIII.  **Causes of Action for Unfair Insurance Practices**

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendants Peleus and Strata under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By their acts, omissions, failures, and conduct Defendants Peleus and Strata have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code.

Such violations include, without limitation, all the conduct described in this petition plus this Defendants' failures to properly investigate Plaintiff's claim. They also

Copy from re:SearchTX

include Defendants' unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim and their failure to pay for the proper repair of Plaintiff's property on which their liability had become reasonably clear. They further include Peleus' use of biased adjusters and consultants to obtain result-oriented estimates and Peleus' use of biased consultants to obtain result oriented reports to assist the insurer in denying Plaintiff's insurance claim.  In addition, Defendants failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, Defendants are guilty of the following unfair insurance practices:

    A.  Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

    B.  Engaging in unfair claims settlement practices;

    C.  Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

    D.  Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Peleus' liability has become reasonably clear by ignoring and discounting damage from the storm;

    E.  Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

    F.  Refusing to properly pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim by conducting a sham investigation that ignored and excluded damage form the subject storm; and

    G.  Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Peleus has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. The conduct of Defendants Peleus and Strata as described herein has resulted in Plaintiff's damages that are described in this petition.

Copy from re:SearchTX

### IX. <u>Cause of Action for Breach of Duty of Good Faith and Fair Dealing</u>

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. By their acts, omissions, failures, and conduct, Peleus has breached its common law duty of good faith and fair dealing by partially denying Plaintiff's claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its denial. Peleus has also breached its duty by unreasonably delaying payment of Plaintiff's claim and by failing to settle Plaintiff's claim because Peleus knew or should have known that it was reasonably clear that the claim was covered. This conduct of Peleus is the proximate cause of Plaintiff's damages.

### X. <u>Waiver and Estoppel</u>

Defendant Peleus and Strata have waived and is estoped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

### XI. <u>Damages</u>

The above described conduct of Defendants Peleus and Strata have caused Plaintiff's damages, which include, without limitation, the cost to properly repair the storm damage to Plaintiff's property in the amount of $1,255,230.60 for the Brittany Street Apartments, $5,939,424.40 for the Coral Cay Apartments, and $68,325.24 for the Colony Apartments, and any investigative and engineering fees incurred during the claim. Plaintiff is also entitled to recover the unpaid amount plus an eighteen percent per annum interest on that amount against Peleus as damages under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of the Court.

Copy from re:SearchTX

## XII.  **Additional Damages**

Defendants Peleus and Strata have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

## XIII.  **Exemplary Damages**

Peleus' breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Peleus are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Peleus for its wrongful conduct and to set an example to deter this Defendant and others similarly situated from committing similar acts in the future.

## XIV.  **Attorney's Fees**

As a result of Defendants' conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and have agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

## XV.  **Rule 194 Requests for Disclosure**

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a) through (l).

Copy from re:SearchTX

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests a trial by jury and also requests that Defendants be cited to appear and answer, and on final hearing, the court award Plaintiff a judgment against Defendants for the following:

1. Actual, economic, additional, and exemplary damages in an amount within the jurisdictional limits of the court;
2. Reasonable attorney's fees through trial and on appeal;
3. Eighteen percent per annum interest on late or unpaid policy benefits pursuant to Chapter 542 of Texas Insurance Code.
4. Pre-judgment and post-judgment interest as provided by law;
5. Costs of court; and
6. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
The Terrace at Concord Park
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310

By: */s/Cassandra Pruski*
    Todd Lipscomb
    State Bar No. 00789836
    todd@lhllawfirm.com
    Cassandra Pruski
    State Bar No. 24083690
    cassie@lhllawfirm.com

Attorneys for Plaintiff

Copy from re:SearchTX